## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL BRAMSON** | : |
| 213 N. Edgewood Street | : |
| Arlington, VA 22201 | : |
| (571) 237-3614 | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **FAISAL MAHMOOD GILL** | : |
| 1901 Avenue of the Stars | : |
| Suite 1060 | : |
| Los Angeles, CA 90067, | : |
| | : |
| 1717 Pennsylvania Avenue NW | : |
| Suite 1025 | : |
| Washington, D.C. 20006 | : |
| (310) 418-6675, | : |
| | : |
| **AIMEE GRIFFIN GILL** | : |
| 1901 Avenue of the Stars | : |
| Suite 1060 | : |
| Los Angeles, CA 90067 | : |
| (802) 233-3297, | : |
| | : |
| 1155 F Street, N.W. | : |
| Suite 1050 | : |
| Washington, D.C. 20004 | : |
| (202) 570-8223 | : |
| | : |
| AND | : |
| | : |
| **GILL LAW FIRM** | : |
| 1901 Avenue of the Stars | : |
| Suite 1060 | : |
| Los Angeles, CA 90067 | : |
| Tel: (310) 418-6675, | : |
| | : |
| 1717 Pennsylvania Avenue NW | : |
| Suite 1025 | : |
| Washington, D.C. 20006 | : |
| Tel: (209) 640-2197 | : |
| | : |
| Defendants | : |

Case: 1:21−cv−01280   JURY DEMAND
Assigned To : Jackson, Amy Berman
Assign. Date : 5/4/2021
Description: Pro Se Gen Civ (F−DECK)

**Judge:**

1

## COMPLAINT

**COMES NOW** the Plaintiff, Michael Bramson (the "Plaintiff"), hereby submits this Complaint against Defendant Faisal Mahmood Gill ("Faisal"), Defendant Aimee Griffin Gill ("Aimee") and Defendant Gill Law Firm ("GLF"), and in support thereof, states as follows:

## PARTIES

1.      Plaintiff, Michael Bramson, is an individual who is a resident of the Commonwealth of Virginia.

2.      Defendant Faisal is an attorney practicing law in the District of Columbia ("D.C.") as the managing partner of the Defendant, GLF.

3.      Defendant Aimee is practicing law in D.C. as an attorney at the Defendant, GLF.

4.      Upon information and belief, at all material times, Defendant Faisal and Defendant Aimee were and remain married.

5.      Defendant GLF is a law firm operating in D.C.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.

7.      Venue is proper in this Court because the causes of action set forth herein concern agreements governed by the laws of D.C. and a substantial amount of the events giving rise to the causes of action set forth herein occurred in D.C.

## FACTUAL BACKGROUND

8.      Plaintiff is a member of SRG Waterfront, LLC ("SRG Waterfront"), a limited liability company organized under Title 29, Chapter 8 of the D.C. Code.

9.      Plaintiff is a member of SRG Terrace, LLC ("SRG Terrace"), a limited liability company organized under Title 29, Chapter 8 of the D.C. Code.

10.      Plaintiff is a member of The Beer Lot LLC ("Beer Lot"), a limited liability company organized in the Commonwealth of Virginia.

11.      Plaintiff is a minority member of Bonfire, LLC ("Bonfire"), a limited liability company organized under Title 29, Chapter 8 of the D.C. Code.

12.      Plaintiff is a minority member of Social Restaurant Group, LLC ("SRG"), a limited liability company organized under Title 29, Chapter 8 of the D.C. Code.

13.      Plaintiff is a former member of Tabu DC, LLC ("Tabu"), a limited liability

company organized under Title 29, Chapter 8 of the D.C. Code.

14. Plaintiff is a member of Mad Rose Inc. ("Mad Rose"), a corporation organized in the Commonwealth of Virginia.

15. Plaintiff is a member, former member, minority member or shareholder of entities outlined in paragraphs 8-14 (collectively referred to as the "Companies").

16. The principal business activity for the Companies is to operate restaurants and/or food and beverage establishments in D.C and Virginia.

17. Defendant Faisal represents the interests of the Companies in the capacity of a corporate attorney.

18. Defendant Faisal represented the interests of Plaintiff in personal legal matters in D.C. and Virginia.

19. Defendant Faisal represented and continues to represent the interests of Naeem Mohd ("Mr. Mohd") in personal legal matters. Mr. Mohd was either a member, former member or shareholder in the Companies.

20. Mr. Mohd has interests that conflict with the interests of Plaintiff and the Companies.

21. Defendant Faisal did not have Plaintiff, Mr. Mohd, or any member or shareholder of the Companies, execute documentation to waive any potential or actual conflict of interest.

22. Defendant Faisal did not document or communicate to Plaintiff, Mr. Mohd, or any member or shareholder of the Companies, a method to deal with any potential or actual conflict of interest.

23. Defendant Aimee represents the interests of Mr. Mohd in SRG Waterfront, Bonfire, Tabu and SRG.

24. Defendant Aimee represents the Companies that are currently in litigation against the Plaintiff in D.C.

25. Upon information and belief, Defendant Aimee did not prepare a retainer agreement to formalize the attorney-client relationship between herself and the entities she represents in litigation against the Plaintiff in D.C.

26. Upon information and belief, Defendant Aimee did not have Mr. Mohd or any member or shareholder of the Companies, execute documentation to waive any potential or actual conflict of interest.

## BONFIRE & MADROSE

27.     Plaintiff is a minority member of Bonfire.

28.     Mr. Mohd is a majority member of Bonfire.

29.     Defendant Faisal purported to represent the interests of Bonfire as its corporate attorney.

30.     Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and Bonfire.

31.     As the purported corporate attorney, Defendant Faisal prepared Bonfire's operating agreement, which was executed by Plaintiff and Mr. Mohd on or about September 16, 2014.

32.     At the time the Bonfire's operating agreement was executed, Plaintiff had a 49% membership interest, with Mr. Mohd holding a 51% majority membership interest in Bonfire.

33.     On or about August 3, 2015, Bonfire entered into a small business association loan with EagleBank (the "Loan").

34.     Over time, Bonfire attracted multiple investors, which diluted Plaintiff's membership interest from 49% to 19% and Mr. Mohd's membership interest from 51% to 37%. This dilution was not on a pro-rata basis.

35.     On or around January 2017, Bonfire was forced to close.

36.     After Bonfire closed, Mr. Mohd offered: (a) to transfer to Plaintiff, fifty percent (50%) of the interest/shares in all businesses Mr. Mohd and Plaintiff thereafter commenced and/or operated jointly, (b) to transfer the principal obligor under the Loan from Bonfire to another corporation, Madrose, and (c) to have the Loan payments be deducted directly from Madrose's operating account, each of the foregoing, if Plaintiff would continue making approximately fifty percent (50%) of the monthly Loan payment (the "Bonfire Agreement").

37.     Despite Plaintiff only having a nineteen percent (19%) membership interest in Bonfire, in exchange for the consideration offered by Mr. Mohd above, Plaintiff continued making approximately fifty percent (50%) of the monthly Loan payment.

38.     Defendant Faisal purported to represent the interests of Madrose as its corporate attorney.

39.     Upon information and belief, Defendant Faisal did prepare a retainer agreement to formalize the attorney-client relationship between himself and Madrose.

40.     When Madrose was organized, Mr. Mohd was operating the business with other

4

shareholders.

41.     At some time during Mr. Mohd's operation of Madrose, the Department of Labor ("DoL") brought a claim for unpaid wages against Madrose and Mr. Mohd, who was the majority owner, employer, and the individual in charge of the day-to-day management of Madrose and its employees.

42.     Mr. Mohd invited other shareholders to join Madrose many years after it was organized. Plaintiff and various other minority shareholders eventually joined Madrose. At this stage, Mr. Mohd owned sixty-six percent (66%) and Plaintiff owned fifteen percent (15%). The remainder of the shares in Madrose were owned by various other minority shareholders.

43.     At no time before Plaintiff and the other minority shareholders decided to join Madrose did Defendant Faisal disclose any information pertaining to the DoL's claim against Madrose to any of the shareholders, with the exception of Mr. Mohd, who already had knowledge of the claim as he was a party to the DoL's claim.

44.     After Bonfire closed, in breach of the Bonfire Agreement, instead of Mr. Mohd conveying fifty percent (50%) of interest/shares in all businesses thereafter commenced and/or operated jointly, Mr. Mohd only conveyed twenty five percent (25%) of Madrose to Plaintiff.

45.     In order to have Loan payments deducted directly from Madrose's operating account, Eaglebank sought security in Madrose. Plaintiff and Mr. Mohd agreed to pledge their shares in Madrose to satisfy this requirement.

46.     Defendant Faisal sent Eaglebank documentation in support of Plaintiff's ownership interest in Madrose. The documentation indicated that Plaintiff would pledge two-hundred and fifty (250) shares of Madrose. At all material times, Madrose had one thousand (1,000) outstanding shares. This documentation produced by Defendant Faisal indicated that Defendant Faisal had knowledge that at the very least, Plaintiff owned twenty-five percent (25%) of the stock in Madrose.

47.     In accordance with the Bonfire Agreement, Plaintiff executed paperwork whereby payments for the Loan would be deducted directly from Madrose's operating account.

48.     Plaintiff waited for several months for Mr. Mohd to sign the same paperwork, during which time Plaintiff continued making his agreed upon portion of the monthly Loan payments.

49.     Despite Mr. Mohd agreeing to execute the paperwork to have Loan payments

deducted directly from Madrose's account, Mr. Mohd never signed the paperwork.

50.     On February 13, 2017, in connection with the DoL's claim for unpaid wages against Madrose and Mr. Mohd, the DoL obtained a judgment in the amount of $173,842.15.

51.     A few weeks before amounts were due under the judgment against Madrose, for the first time ever, Defendant Faisal suddenly disclosed information regarding this judgment to all of the other shareholders of Madrose.

52.     Defendant Faisal attempted to arrange a board meeting with the shareholders of Madrose. Defendant Faisal falsely advised to the shareholders that he needed to disclose the identification of all shareholders of Madrose to the DoL as the DoL will require a personal guaranty from all shareholders for the judgment against Madrose.

53.     Defendant Faisal attempted to convince the shareholders of Madrose to cut their ties with Madrose. He proposed a strategy for all Madrose shareholders, with the exception of Mr. Mohd, to swap their shares in Madrose, of which Mr. Mohd is the majority owner and President, to Pamplona, LLC, a restaurant in which Mr. Mohd is not a majority owner.

54.     As a shareholder in Madrose, Plaintiff sought advice from Madrose's purported attorney, Defendant Faisal, as to the implications of the judgment against Madrose and its shareholders. Defendant Faisal advised Plaintiff that, notwithstanding Plaintiff's limited role as a minority shareholder and non-employer, as a shareholder of Madrose, the DoL can and will enforce the judgment against Plaintiff and Plaintiff's spouse.

55.     As other shareholders of Madrose became disinterested in Defendant Faisal's strategy to swap shares in fear of the DoL judgment, Defendant Faisal and Mr. Mohd diverted their attention towards Plaintiff. Defendant Faisal and Mr. Mohd operated in concert to have Plaintiff sell his entire ownership interest in Madrose for $29,000, in exchange for which, Mr. Mohd would deem Plaintiff's portion of the Loan satisfied and subsequent to which, Mr. Mohd would assume any personal liability EagleBank could assert over Plaintiff for any amounts due under the Loan.

56.     At the time, each Madrose share was valued at $18,000; Plaintiff's ownership interest in Madrose, which was twenty-five percent (25%), was valued at $450,000.

57.     In order for Defendant Faisal to induce Plaintiff into this one-sided deal, which overwhelmingly favored Mr. Mohd, Defendant Faisal made the following representations to Plaintiff: (a) in order for Mr. Mohd to enter into a monetary settlement with the DoL, Mr. Mohd desperately needs cash to resolve a portion of the judgment; (b) Mr. Mohd did not have money to

pay the DoL; (c) the DoL has the authority to pursue any amounts awarded against Plaintiff and Plaintiff's spouse; and (d) if Plaintiff wants to ensure that the judgment cannot be enforced against Plaintiff's spouse, Plaintiff has no choice, but to accept Mr. Mohd's offer and sell Plaintiff's entire ownership interest in Madrose to Mr. Mohd at a steep discount.

58.     Defendant Faisal prepared the stock purchase agreement in which he set forth Plaintiff's entire ownership interest in Madrose as thirteen percent (13%), despite Plaintiff owning twenty-five percent (25%) of Madrose.

59.     In order to protect Plaintiff's spouse from any legal liability, Plaintiff relied on the advice of the purported corporate attorney for Bonfire and Madrose and agreed to sell his shares in Madrose for a nominal value of $29,000. Plaintiff further agreed to continue paying approximately fifty percent (50%) of the monthly Loan payments until Mr. Mohd would pay the $29,000, which was agreed to be paid no later than February 2019 (the "Buyout Agreement").

60.     Immediately upon Plaintiff executing the documentation to sell his shares to Mr. Mohd, Mr. Mohd who was allegedly desperate for cash, had sufficient funds to satisfy the DoL judgment in its entirety, a sum substantially greater than $29,000.

61.     Upon information and belief, at all material times during the negotiation of Madrose shares, Mr. Mohd had sufficient funds to satisfy the DoL judgment.

62.     Upon information and belief, Defendant Faisal had knowledge that Mr. Mohd had sufficient funds to satisfy the DoL judgment.

63.     Defendant Faisal and Mr. Mohd operated in concert to remove Plaintiff from Madrose.

64.     Approximately a year later, on or around January 2019, Mr. Mohd paid Plaintiff the $29,000 for the Madrose shares.

65.     In accordance with the Buyout Agreement, after Mr. Mohd paid Plaintiff for the Madrose shares, Mr. Mohd assumed any personal liability EagleBank may assert over Plaintiff for any amounts due under the Loan.

66.     On April 11, 2019, Defendant Aimee, filed a lawsuit against Plaintiff for a failure to make monthly payments towards the Loan.

### SRG WATERFRONT

67.     Plaintiff and Mr. Mohd are members of SRG Waterfront.

68.     Rajiv Chadha ("Mr. Chadha") is a minority member of SRG Waterfront.

69.     Defendant Faisal purported to represent the interests of SRG Waterfront as its corporate attorney.

70.     Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and SRG Waterfront.

71.     As the purported corporate attorney, Defendant Faisal prepared SRG Waterfront's operating agreement, which was executed by the Plaintiff, Mr. Mohd and Mr. Chadha on or about April 1, 2016.

72.     Defendant Faisal held himself out as a member of SRG Waterfront at events hosted at SRG Waterfront.

73.     Defendant Faisal operated in concert with Mr. Mohd and Mr. Chadha to oust Plaintiff from SRG Waterfront.

74.     Defendant Faisal had the best interests of Mr. Mohd and himself in his purported capacity of a corporate attorney. He did not have the best interests of SRG Waterfront or of its members. Due to this conflict of interest, Defendant Faisal did not enforce provisions of the SRG Waterfront operating agreement that entitled Plaintiff to receive significant sums of money in the form of management fees.

75.     The SRG Waterfront operating agreement contemplated formal methods to make or request a capital call, methods to loan members who do not contribute to capital calls, and methods to remove members in the event they fail to contribute capital in the manner outlined in the SRG Waterfront operating agreement.

76.     A member was required to contribute to a capital call only if SRG Waterfront "needed to make up expenditures for the month."

77.     In order for a capital call to be issued, the SRG Waterfront operating agreement specified a few requirements: (a) a board meeting must take place; (b) this board meeting must consist of all SRG Waterfront members; and (c) at this meeting, the board is required to present all options for acquiring additional capital.

78.     As Defendant Faisal was the attorney for numerous businesses in which Plaintiff and Mr. Mohd were involved, in connection with holding board meetings, it was common practice for Defendant Faisal to send out invitations for board meetings to the various members, for Defendant Faisal to be present at such board meetings, and for Defendant Faisal to take notes during these board meetings.

79.     The SRG Waterfront operating agreement further stipulated that "If a member is not able to make payments for six times when needed for expenditures… then the other members have the option for purchasing the shares for the initial investment made by non paying member."

80.     Despite SRG Waterfront having access to funds in a line of credit and the SRG Waterfront's operating account maintaining a positive balance at all material times, between January and February 2019, Mr. Chadha and Mr. Mohd suddenly and abruptly demanded capital on six (6) occasions.

81.     Mr. Mohd and Mr. Chadha did not comply with the requirements set forth in the SRG Waterfront operating agreement to request a capital call for all six (6) requests. Between January and February 2019, there was not a single instance where a capital call was made in accordance with the SRG Waterfront operating agreement.

82.     At all material times, Defendant Faisal had knowledge of the disputes between Mr. Mohd and Plaintiff.

83.     Despite Plaintiff not missing a capital call, Defendant Faisal met Plaintiff in a parking lot and hand-delivered a letter dated February 16, 2019, per which letter, Plaintiff was dissociated from SRG Waterfront (the "Bramson Dissociation Letter").

84.     Defendant Faisal represented to Plaintiff that he did not have knowledge of Mr. Mohd or Mr. Chadha's attempt to oust Plaintiff from SRG Waterfront until Mr. Mohd and Mr. Chadha asked him to prepare the Bramson Dissociation Letter.

85.     Defendant Faisal represented to Plaintiff that he did not advise Mr. Mohd or Mr. Chadha regarding capital calls or the SRG Waterfront operating agreement prior to this attempt to oust Plaintiff from SRG Waterfront.

86.     Upon information and belief, between the six (6) purported capital calls and prior to the sixth (6th) purported capital call, Defendant Faisal advised Mr. Mohd and Mr. Chadha on the method to oust Plaintiff from SRG Waterfront.

87.     Defendant Faisal claimed that he did not write the Bramson Dissociation Letter. In order to justify this claim, Defendant Faisal stated that if he had drafted the Bramson Dissociation Letter, it would have been on the GLF letterhead.

88.     Upon information and belief, Defendant Faisal wrote the Bramson Dissociation Letter.

89.     This attempt to oust Plaintiff from SRG Waterfront occurred a few weeks after

Defendant Faisal operated in concert with Mr. Mohd to have Plaintiff removed from Madrose.

90.    The SRG Waterfront operating agreement set forth that Plaintiff is entitled to a 2.5% management fee of SRG Waterfront's gross sales for his work on behalf of SRG Waterfront.

91.    At the time, Mr. Mohd and Defendant Faisal were operating in concert with an intent to oust Plaintiff from the Companies, including SRG Waterfront. Accordingly, despite repeated efforts by Plaintiff to get the management fee in accordance with SRG Waterfront's operating agreement, Defendant Faisal, Mr. Mohd and Mr. Chadha refused to allow Plaintiff to obtain the management fee, in breach of SRG Waterfront's operating agreement.

## SRG TERRACE

92.    Plaintiff, Mr. Mohd and Mr. Chadha are members of SRG Terrace.

93.    The terrace ("Terrace") is the upper level of SRG Waterfront.

94.    Defendant Faisal purported to represent the interests of SRG Terrace as its corporate attorney.

95.    Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and SRG Terrace.

96.    As the purported corporate attorney, Defendant Faisal prepared SRG Terrace's operating agreement, which was executed by the Plaintiff, Mr. Mohd and Mr. Chadha on or about May 24, 2016.

97.    Defendant Faisal held himself out as a member of SRG Terrace at events hosted at SRG Terrace.

98.    The SRG Terrace operating agreement indicates that Plaintiff is the member in charge of the day-to-day management of SRG Terrace.

99.    In accordance with the SRG Terrace operating agreement and Plaintiff's role as a manager of SRG Terrace, Plaintiff is entitled to a three percent (3%) management fee.

100.    Immediately following Defendant Faisal, Mr. Mohd and Mr. Chadha's attempt to dissociate Plaintiff from SRG Waterfront on February 16, 2019, upon information and belief, Defendant Faisal operated in concert with Mr. Mohd and Mr. Chadha to dissociate Plaintiff from SRG Terrace by excluding Plaintiff from day-to-day management and operations of SRG Terrace, in breach of SRG Terrace's operating agreement.

101.    Upon information and belief, immediately after the attempt to oust Plaintiff from SRG Waterfront, Defendant Faisal, Mr. Mohd and Mr. Chadha operated in concert, and

misappropriated significant sums of money from SRG Terrace to SRG Waterfront without Plaintiff's knowledge or consent.

102.    Defendant Faisal assisted Mr. Mohd and Mr. Chadha with the transfer of SRG Terrace funds to SRG Waterfront in the following amounts: (a) $40,000 in February 2019, (b) $55,581 in March 2019, (c) $95,548.54 in April 2019, and (d) $57,442 in May 2019.

103.    In order to exclude Plaintiff from SRG Terrace, Defendant Faisal operated in concert with Mr. Mohd and Mr. Chadha to create another legal entity, under which the Terrace would operate.

104.    Upon information and belief, the new entity is created to ensure Plaintiff cannot make management decisions as required by SRG Terrace's operating agreement and to ensure Plaintiff is not entitled to the gross sales of the new legal entity.

### BEER LOT

105.    Plaintiff is a member of Beer Lot.

106.    Mr. Mohd is a former member of Beer Lot.

107.    The remainder of the membership interest in Beer Lot is owned by various other members.

108.    Defendant Faisal purported to represent the interests of Beer Lot as its corporate attorney.

109.    Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and Beer Lot.

110.    As the purported corporate attorney, Defendant Faisal prepared Beer Lot's operating agreement, which was executed by the Plaintiff, Mr. Mohd and the remaining members of Beer Lot on or about November 22, 2016.

111.    On or about February 12, 2019, Mr. Mohd sold his membership interest in Beer Lot to Beer Lot.

112.    A dispute arose in connection with Mr. Mohd's sale of his membership interest.

113.    On July 11, 2019, Defendant Faisal reached out to counsel for other members of Beer Lot as Mr. Mohd's personal attorney in an attempt to resolve Mr. Mohd's dispute with Beer Lot. Priti Khanna, counsel for another member of Beer Lot, explicitly requested clarification regarding Defendant Faisal's conflict of interest as he reached out to Ms. Khanna as Mr. Mohd's personal attorney. Defendant Faisal responded to Ms. Khanna noting: "Also, after our

conversation, I checked with [Virginia State Bar], and this is not a conflict of interest for me since I am not filing suit against Beer Lot, and this case is not "substantially related to what I did for Beer Lot.""[1] (emphasis added).

114.   On July 22, 2019, Defendant Faisal filed a lawsuit on behalf of Mr. Mohd against Beer Lot and four (4) of the five (5) other members of Beer Lot. This lawsuit is currently being litigated under Case Number, CL19002272-00 in the Commonwealth of Virginia.

115.   On September 10, 2019, Defendant Faisal, sent correspondence to Plaintiff's counsel, noting that a different attorney shall be assuming carriage of Mr. Mohd's matter because: "… I think I am probably conflicted from filing suit against Beer Lot, since I was its counsel."[2]

116.   Notwithstanding Defendant Faisal's email on September 10, 2019, Defendant Faisal continues to represent Mr. Mohd in his claim against Beer Lot.

### TABU

117.   Plaintiff is a former member of Tabu.

118.   Mr. Mohd is a member of Tabu.

119.   The remainder of the membership interest in Tabu is owned by various other members.

120.   Defendant Faisal purported to represent the interests of Tabu as its corporate attorney.

121.   Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and Tabu.

122.   As the purported corporate attorney, Defendant Faisal prepared Tabu's operating agreement, which was executed by the Plaintiff and Mr. Mohd on or about August 24, 2018.

123.   Prior to Tabu becoming operational, with numerous disputes taking place between Mr. Mohd and Plaintiff, Defendant Faisal approached Plaintiff and attempted to convince Plaintiff to cut Plaintiff's ties with Mr. Mohd by selling his shares in Tabu to Mr. Mohd.

124.   The consideration in exchange for Plaintiff selling his shares in Tabu to Mr. Mohd was Mr. Mohd agreeing to resolve an outstanding debt Plaintiff owed to Mr. Mohd in another business the two (2) operated together. That other business was Prospect DC, LLC, and the amount

---

[1] A copy of the correspondence between Ms. Khanna and Defendant Faisal is attached hereto as Exhibit A and incorporated herein by reference.
[2] A copy of the correspondence between Mr. Bhatia and Defendant Faisal is attached hereto as Exhibit B and incorporated herein by reference.

of debt Plaintiff owed Mr. Mohd was $121,800.

125.   At the time, Plaintiff's interest in Tabu, a restaurant located in an affluent area, which was twenty-five percent (25%), was valued at $750,000, with each percent of Tabu valued at $30,000.

126.   Defendant Faisal exerted effort to convince Plaintiff that Plaintiff's sale of his Tabu shares to Mr. Mohd was a great business deal given Plaintiff's personal and business relationship with Mr. Mohd had become unsalvageable.

127.   Plaintiff relied on Defendant Faisal's representation and advice, and on April 15, 2019, Plaintiff and Mr. Mohd signed a share purchase agreement for the sale of Plaintiff's shares in Tabu.

128.   Following Plaintiff's reliance on Defendant Faisal's representations and advice, on May 6, 2019, Defendant Aimee filed a lawsuit on behalf of Tabu, Mr. Mohd and Mr. Chadha against Plaintiff and other former members of Tabu.

129.   On the one hand, Defendant Faisal exerted best efforts to remove Plaintiff from Tabu; on the other hand, his spouse, Defendant Aimee, filed a lawsuit against Plaintiff for leaving Tabu.

### SRG

130.   Plaintiff is a minority member of SRG.

131.   Mr. Mohd is a majority member of SRG.

132.   The remainder of the membership interest in SRG is owned by various other members.

133.   Defendant Faisal purported to represent the interests of SRG as its corporate attorney.

134.   Defendant Faisal did not prepare a retainer agreement to formalize the attorney-client relationship between himself and SRG.

135.   As the purported corporate attorney, Defendant Faisal prepared SRG's operating agreement, which was executed by Plaintiff, Mr. Mohd and a minority member on or about June 14, 2014.

136.   As the sole majority member, Mr. Mohd has complete decision-making authority in SRG.

137.   Upon information and belief, Mr. Mohd: illegally transferred liquor from SRG to

other in-state and out-of-state restaurants and bars under his ownership or control or in which he is a member; illegally transferred liquor from SRG to a private residence in Leesburg, VA; used his SRG business cards for personal expenses without the consent of other SRG members; illegally accepted kickbacks from vendors; and was altering the sales figures of SRG in order to pay less sales tax to D.C.

138.    Plaintiff sought financial and business documentation from Mr. Mohd regarding the numerous wrongdoings taking place at SRG. Mr. Mohd was unwilling to comply.

139.    Plaintiff brought to Defendant Faisal's attention, among other things, the illegal transfer of alcohol, the alteration of sales figures, Mr. Mohd's usage of SRG funds as his personal funds, Mr. Mohd's acceptance of kickbacks from SRG vendors and many other instances of wrongdoings.

140.    As the purported attorney of SRG, Defendant Faisal did not take any action to address Mr. Mohd's conduct, or proceed as reasonably necessary in the best interests of SRG, in breach of D.C. Rules of Professional Conduct, Rule 1.13: Organization as Client.

141.    Despite Plaintiff's best efforts to resolve issues at SRG and repeated requests to obtain documentation, Mr. Mohd refused to allow Plaintiff to review SRG's financial statements, tax returns, alcohol logs and other information which Plaintiff was entitled to review as a member of SRG.

142.    On November 15, 2019, Plaintiff filed a lawsuit against Mr. Mohd and SRG.

143.    Plaintiff was able to file and obtain a temporary restraining order and preliminary injunction ("Injunction") against Mr. Mohd. The Injunction restrained Mr. Mohd from making payments to anyone other than SRG from SRG funds and required Mr. Mohd to produce information requested under the Injunction.

144.    Following the issuance of the Injunction and a review of limited SRG financial information availed to Plaintiff, among numerous violations, the review indicated that Mr. Mohd wrote a check to Defendant Aimee and backdated the check to make it appear as if it was issued prior to the Injunction going into effect.

145.    Upon information and belief, other minority members of SRG did not have knowledge that Defendant Aimee provided legal services to SRG.

146.    Plaintiff also discovered that Defendant Faisal was accepting payments from SRG for work unrelated to Defendant Faisal's representation of SRG.

147.   Defendant Faisal, as the purported corporate attorney, organized SRG and its operating agreement in a manner that allows Mr. Mohd to operate SRG without regard to the valid membership interests of the other members. Defendant Faisal did this to benefit himself. For example, provisions within SRG's operating agreement demonstrate that the agreement was drafted for the sole benefit of Mr. Mohd, with such provisions unlikely to be enforced in a court of law: "…Member Bramson agree not to open another restaurant within a Twenty-Five mile ([25]15) radius of Washington, D.C. for a period of Five (5) years."

148.   Defendant Faisal and Defendant Aimee's representation of the Companies was clearly a pretext for Defendant Faisal to represent Mr. Mohd individually as Defendant Faisal reaps significant financial benefits from his representation of Mr. Mohd.

### REBEL TACO

149.   Plaintiff and various other shareholders were planning to start a restaurant. This restaurant currently operates as Rebel Taco.

150.   In or around 2018, Defendant Faisal, provided funds to support Rebel Taco (the "Rebel Taco Funds").

151.   Defendant Faisal represented to Plaintiff that he obtained the Rebel Taco Funds from one of his clients.

152.   Upon information and belief, Defendant Faisal obtained the Rebel Taco Funds from a client escrow account.

153.   Despite Defendant Faisal making this investment into Rebel Taco, Defendant Faisal later sought to have Rebel Taco and/or its shareholders return the Rebel Taco Funds to him, even though the shareholders were not obligated to return the Rebel Taco Funds.

154.   Because Defendant Faisal could not convince the shareholders to return the Rebel Taco Funds, Defendant Faisal repeatedly threatened to take legal action against Plaintiff's spouse in the event Plaintiff did not comply with Defendant Faisal's demand.

### DEFAMATION LAWSUIT

155.   After Plaintiff filed an action to prevent Mr. Mohd and Mr. Chadha from ousting Plaintiff from SRG Waterfront, on numerous occasions, Defendant Faisal attempted to settle the numerous conflicts and actions between Mr. Mohd and Plaintiff.

156.   Defendant Faisal repeatedly attempted to convince Plaintiff to settle the numerous conflicts and lawsuits Plaintiff and Mr. Mohd had against each other.

157.    Defendant Faisal repeatedly utilized the Plaintiff's spouse as leverage in settlement negotiations and threatened legal action against Plaintiff's spouse if Plaintiff did not accept Mr. Mohd's offers.

158.    Defendant Faisal has represented Plaintiff and Plaintiff's spouse as their personal attorney for other unrelated legal matters.

159.    On January 30, 2020, given Plaintiff's reluctance to accept offers that would significantly harm Plaintiff's interests, Defendant Faisal frivolously and maliciously filed a defamation action against Plaintiff and Plaintiff's spouse.

### FIRST CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

160.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 159 as if fully set forth herein.

161.    Plaintiff and Defendant Faisal entered into a valid and binding agreement with respect to Defendant Faisal's representation of Plaintiff in personal legal matters. In doing so, a fiduciary duty is imposed for Defendant Faisal to act in the best interest of Plaintiff. Inherent and arising from this relationship are the fiduciary duties of loyalty, care, integrity, and good faith.

162.    Defendant Faisal purported to be the corporate attorney of the Companies. In doing so, a fiduciary duty is imposed for Defendant Faisal to act in the best interests of the Companies and the members or shareholders of the Companies. Inherent in and arising from this relationship are the fiduciary duties of loyalty, care, integrity, and good faith.

163.    Defendant Faisal obtained a vast amount of information about Plaintiff's personal, financial and business life during his representation of Plaintiff in personal legal matters and as the purported attorney for the Companies.

164.    Defendant Faisal represented Plaintiff's spouse in unrelated legal matters.

165.    Defendant Faisal obtained a vast amount of information about Plaintiff's spouse during his representation of Plaintiff's spouse in personal legal matters.

166.    Defendant Faisal represented Mr. Mohd in personal legal matters.

167.    Defendant Faisal did not obtain a conflict of interest waiver from Plaintiff, other members, or shareholders of the Companies, in connection with Defendant Faisal's joint representation of Plaintiff, Mr. Mohd and the Companies.

168.    Defendant Faisal's purported representation of the Companies was pretextual for Defendant Faisal to represent Mr. Mohd, from whose individual representation, Defendant Faisal

benefited financially.

169.   At all material times, Defendant Faisal was acting in the best interests of himself and Mr. Mohd.

170.   Defendant Faisal breached his fiduciary duty by engaging in acts and omissions alleged herein including, among other things, failing to disclose his conflict of interest, failing to deal fairly and in good faith with Plaintiff, failing to account to Plaintiff, holding himself out as a member of SRG Waterfront and SRG Terrace, seeking to coerce Plaintiff to accept settlement offers by using Plaintiff's spouse as leverage and threatening legal action, and operating in concert with Mr. Mohd to remove Plaintiff from Madrose, SRG Waterfront, SRG Terrace and Tabu.

171.   Defendant Faisal wrongly held himself out as a member of SRG Waterfront and SRG Terrace. By doing so, Defendant Faisal was usurping corporate opportunities to benefit himself.

172.   Defendant Faisal operated in concert with other members of SRG Waterfront and SRG Terrace to oust Plaintiff from SRG Waterfront and SRG Terrace, entities in which Defendant Faisal held himself out as a member.

173.   At all material times, Defendant Faisal had a conflict of interest, which compromised his ability to make decisions in the best interests of the Companies.

174.   As Defendant Faisal and Defendant Aimee work in the same law firm, Defendant Faisal's multiple conflicts of interest are imputed to Defendant Aimee and Defendant GLF.

175.   Defendant Faisal and Defendant Aimee are in breach of the D.C. Rules of Professional Conduct, Rule 1.7: Conflict of Interest: General Rule, Rule 1.9: Conflict of Interest: Former Client, and Rule 1.10: Imputed Disqualification: General Rule.

176.   As a direct and proximate result of Defendant Faisal's breach of fiduciary duty, Plaintiff has suffered damage in an amount to be proved at trial.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

177.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 176 as if fully set forth herein.

178.   Plaintiff and Defendant Faisal entered into a valid and binding agreement with respect to Defendant Faisal's representation of Plaintiff in personal legal matters.

179.   Plaintiff had an expectation that his interests were being represented by Defendant Faisal in accordance with their agreement.

180.   Defendant Faisal obtained a vast amount of information about Plaintiff's personal, financial and business life during his representation of Plaintiff in personal legal matters and as the purported attorney for the Companies.

181.   Defendant Faisal was not acting in the best interests of Plaintiff, in breach of the agreement between Plaintiff and Defendant Faisal.

182.   At all material times, Defendant Faisal had a conflict of interest, in breach of D.C. Rules of Professional Conduct, Rule 1.7: Conflict of Interest: General Rule, and Rule 1.9: Conflict of Interest: Former Client.

183.   As a result of Defendant Faisal's breach of contract, Plaintiff has incurred and will continue to incur significant losses and damages.

### THIRD CAUSE OF ACTION: BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

184.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 183 as if fully set forth herein.

185.   As the personal attorney for Plaintiff, it imparted an implied duty upon Defendant Faisal to act in good faith and in the best interests of Plaintiff when representing Plaintiff.

186.   Plaintiff had an expectation that his interests were being represented by Defendant Faisal in accordance with Defendant Faisal's representation of Plaintiff in the capacity of a personal attorney, and as a corporate attorney who is required to act in the best interests of the Companies, its members and its shareholders.

187.   Defendant Faisal knowingly and intentionally deceived Plaintiff.

188.   Defendant Faisal did not disclose his conflict of interest to Plaintiff or any members or shareholders of the Companies.

189.   At all material times Defendant Faisal was representing the interests of himself and Mr. Mohd.

190.   Plaintiff sought and relied on advice from Defendant Faisal as his personal attorney.

191.   Plaintiff sought and relied on advice from Defendant Faisal as the purported corporate attorney of the Companies.

192.   Defendant Faisal provided assistance to benefit certain members of the Companies and especially Mr. Mohd. This assistance to other members in the same entities in which Plaintiff has/had an interest was detrimental to Plaintiff and constitutes bad faith.

193.    Defendant Faisal's attempt to remove Plaintiff from Madrose, SRG Waterfront, SRG Terrace and Tabu constituted bad faith.

194.    Defendant Faisal's representation of Mr. Mohd in Beer Lot constituted bad faith.

195.    Defendant Faisal's filing of the defamation lawsuit against Plaintiff and Plaintiff's spouse constituted bad faith.

196.    As a result of Defendant Faisal's bad faith, Plaintiff has incurred and will continue to incur significant losses and damages.

**FOURTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

197.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 196 as if fully set forth herein.

198.    Defendant Faisal misrepresented to the members and shareholders of the Companies that he was acting in the best interests of the Companies.

199.    Defendant Faisal misrepresented to Plaintiff the amount of shares Plaintiff owned in Madrose.

200.    Defendant Faisal misrepresented to shareholders of Madrose the implications of the unpaid wages dispute.

201.    Defendant Faisal misrepresented to Plaintiff that the DoL will pursue legal action against Plaintiff's spouse to coerce Plaintiff to comply with Mr. Mohd's demands.

202.    Defendant Faisal misrepresented to Plaintiff that he had no knowledge and did not provide any assistance to Mr. Mohd and Mr. Chadha to dissociate Plaintiff from SRG Waterfront.

203.    Defendant Faisal made numerous misrepresentations to Plaintiff regarding the value of shares Plaintiff owned in Madrose and Tabu.

204.    The intentional misrepresentations were material and were made by Defendant Faisal with knowledge that they were false or with recklessness as to whether they were true or false.

205.    Defendant Faisal knew or should have known that Plaintiff would rely on the misrepresentations.

206.    As a member or shareholder in the Companies, Plaintiff was justified in relying on the misrepresentations made to him by Defendant Faisal.

207.    As a direct result of his justifiable reliance on the misrepresentations of Defendant Faisal, Plaintiff sustained damages.

## FIFTH CAUSE OF ACTION: CONSTRUCTIVE FRAUD

208.　Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 207 as if fully set forth herein.

209.　By virtue of being the corporate attorney of the Companies, and the attorney for Plaintiff in personal legal matters, Defendant Faisal owed Plaintiff a fiduciary duty.

210.　Among the fiduciary duties owed to Plaintiff were the duties of loyalty and care and the duty to competently, and according to best practices, represent Plaintiff.

211.　Defendant Faisal intentionally and with malice and/or reckless disregard for Plaintiff, made misrepresentations to benefit himself and Mr. Mohd.

212.　The misrepresentations were material and were made by Defendant Faisal with knowledge that they were false or with recklessness as to whether they were true or false.

213.　Defendant Faisal knew or should have known that Plaintiff would rely on the misrepresentations.

214.　As a member or shareholder in the Companies, Plaintiff was justified in relying on the misrepresentations made to him by Defendant Faisal.

215.　As a direct and proximate result of Defendant Faisal's misrepresentations and conflict of interest, Plaintiff has suffered damage in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION: CONSPIRACY TO COMMIT FRAUD

216.　Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 215 as if fully set forth herein.

217.　Defendant Faisal operated in concert with Mr. Mohd to remove Plaintiff from Madrose, SRG Waterfront, SRG Terrace and Tabu.

218.　Defendant Faisal operated in concert with his spouse, Defendant Aimee, to pursue legal action against Plaintiff. Defendant Aimee's representation of Mr. Mohd, other members of the Companies, and the Companies, was a pretense for Defendant Faisal to shield Defendant Faisal's multiple conflicts of interest.

219.　Defendant Faisal's conflicts of interest are imputed to Defendant Aimee. Defendant Faisal and Defendant Aimee are in breach of the D.C. Rules of Professional Conduct, Rule 1.7: Conflict of Interest: General Rule, Rule 1.9: Conflict of Interest: Former Client, and Rule 1.10: Imputed Disqualification: General Rule.

220.　Plaintiff has suffered harm as a result of the conspiracy.

## SEVENTH CAUSE OF ACTION: DECLARATORY JUDGMENT

221.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 220 as if fully set forth herein.

222.    There presently exists an actual and justiciable controversy between Plaintiff and Defendants.

223.    Plaintiff presently has no adequate remedy at law.

224.    Amounts that will become due and payable to Plaintiff are not yet liquidated.

225.    Although Plaintiff has demanded that Defendants acknowledge their obligations to him, they have so far refused to do so.

Plaintiff hereby gives notice that he intends to seek leave to amend his Complaint to rely upon such other and further claims and causes of action as become apparent throughout the discovery process in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully prays for judgment as follows:

1.    That this Court permanently enjoin the Defendants from representing any of the Companies in which Plaintiff has an interest;

2.    That this Court permanently enjoin the Defendants from communicating with internal and external stakeholders, third parties and the media regarding the Companies and Plaintiff;

3.    That this Court determine and declare that Defendant Faisal is in violation of his fiduciary duties to Plaintiff;

4.    That this Court determine and declare that Defendant Faisal is in breach of his agreement with Plaintiff;

5.    That this Court determine and declare that Defendant Faisal is in violation of the duties of good faith and fair dealing;

6.    That this Court determine and declare that Defendant Faisal made false representations to Plaintiff;

7.    That this Court determine and declare that Defendant Faisal and Defendant Aimee conspired with Mr. Mohd, other members and shareholders to inflict damage to Plaintiff's interest in the Companies;

8.      That this Court award any other equitable relief necessary;

9.      That this Court award compensatory damages against Defendants in an amount to be proven at trial;

10.     That this Court award punitive damages at the maximum amount permitted by law;

11.     That this Court award pre-judgment interest, attorneys' fees, accounting costs and courts costs; and

12.     That this Court award such other and further relief as it may deem just and proper.


Date:   May 3, 2021

                                        *Michael Bramson*
                                        Michael Bramson
                                        213 N. Edgewood Street
                                        Arlington, VA 22201
                                        Phone: (571) 237-3614
                                        Email: mikebramson@gmail.com

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a **JURY TRIAL** on all issues so triable.

Date:   May 3, 2021

*Michael Bramson*
Michael Bramson

# EXHIBIT A

**From:** Faisal Gill <fgill@glawoffice.com>
**Sent:** Thursday, July 18, 2019 9:11:14 AM
**To:** Priti Khanna
**Subject:** Re: For Mr. Agrawal

Ms. Khanna,

We are about to file suit against all the members, will you accept service for your client?  If not, could I have his address, the only address I have for him is his work address, and I don't want to send the Sheriff to his work.  Or,if you can represent to me that your client is not preventing Naeem from reclaiming his shares through a board vote, and will vote in favor if there is such a vote, then I have no reason to file suit against him.  Thank you.

Also, after our conversation, I checked with VSB, and this is not a conflict of interest for me since I am not filing suit against Beer Lot, and this case is not "substantially related to what I did for Beer Lot."

Sincerely,
Faisal

On Thu, Jul 11, 2019 at 9:17 PM Priti Khanna <pkhanna@khannalaw.com> wrote:
There is a clear conflict of interest here and all your communication with me had been as legal counsel for beer lot. You are further listed on Mr. Agrawal's purchase agreement as such. Regardless, no use litigating this matter over email.

Get Outlook for Android

**From:** Faisal Gill <fgill@glawoffice.com>
**Sent:** Thursday, July 11, 2019 9:02:36 PM
**To:** Priti Khanna
**Subject:** Re: For Mr. Agrawal

Ms. Khanna,

The issue here is who is the owner of Beer Lot.  Throughout my representation, I have always represented Mr. Mohd in all the matters related to Beer Lot. I would also not be filing suit against Beer Lot but rather the members.  Lastly, I do not believe that I am in violation of Rule 1.9, since these matters are not "substantially related."

Sincerely,
Faisal

On Thu, Jul 11, 2019 at 5:53 PM Priti Khanna <pkhanna@khannalaw.com> wrote:
I'll let you know. However, I am confused as to how you can send correspondence on behalf of Mr. Mohd. You have clearly stated to me over letters and email correspondence in the past that you represent Beer Lots. That not only creates a serious conflict of interest regarding your current representation of Mr. Mohd but also means you are in clear violation of Virginia Professional Rules of conduct. Furthermore, your actions create malpractice claims that members of Beer Lot may have against you.

I will certainly forward your correspondence to Mr. Agrawal ad well as advise him of all the conflict issue as well as.

Regards,

PK

Get Outlook for Android

EXHIBIT B

**From:** Faisal Gill <fgill@glawoffice.com>
**Date:** Tuesday, September 10, 2019 at 1:54 AM
**To:** Vikrant Bhatia <vikrant@bhatialawfirm.com>
**Subject:** Amended Complaint


Mr. Bhatia,

Please see attached.  Also, Mr. Ashraf Nubani will be taking over since I think I am probably conflicted from filing suit against Beer Lot, since I was its counsel.

Per our email, I am not assuming that you will be removing Friday's hearing, so I do not plan to attend, unless I hear otherwise from you.

Sincerely,
Faisal
Gill Law Firm
1155 F Street NW
Suite 1050
Washington, DC 20005
202-570-8223
202-318-4331 (fax)